IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

K.B. and P.B., minors, by and through their mother
and; next friend, MELISSA SIDDIQI, nee BOLTON,

Plaintiffs

v.                            Civil Action No.    3:21cv00602

Chesterfield County Public Schools,

Defendant.

## COMPLAINT

**COME NOW**, your plaintiffs, by their counsel set forth herein the following facts and causes of action against the defendant Chesterfield County Public Schools as follows:

### JURISDICTION

1)      The subject matter jurisdiction of this Court is invoked pursuant the 14th Amendment to the United States Constitution; 20 U.S.C. 1415(i)(2)(A); 28 U.S.C. § 1331; and 42 U.S.C. §1983.

### PARTIES

2)      K.B. and P.B. are the minor child of their mother and next friend, MELISSA SIDDIQI, nee BOLTON,

3)      Chesterfield County Public Schools ("Chesterfield") is the Local Education Agency (LEA) and was at all times relevant herein place where the children were placed for educational purposes by their mother.

### BACKGROUND FACTS

### COUNT 1

### (Mediation Efforts by the Parties)

4)      On or about August 5, 2019, the Plaintiff filed in this Court a pro se Complaint against

the Chesterfield and Robert W Thompson which complaint was later amended in behalf of her son, K. B., a minor appealing a May 6, 2019 and June 8, 2019 decisions of the administrative Hearing Officers in which KB's educational assistance was revoked.

5)	On August 26. 2019, the Court ordered that the parties participate in mediation before United States district Judge David J. Novak

6)	Harold E. Johnson, Esquire was appointed to serve in that limited capacity as pro bono counsel for plaintiffs and the parties were ordered by the Court To attend a settlement conference with US Magistrate Judge David J. Novak.

7)	On September 11, 2019, Chesterfield filed a motion and memorandum in support of the motion to dismiss for failure to state a claim.

8)	On October 9, 2019, the parties participated in mediation before Judge Novak who required that Melissa Bolton and her fiancé establish a residence in Chesterfield County by a certain date and that the fiancé terminate his current lease in order to re-locate to Chesterfield County, all of which was subsequently done in a timely manner.

9)	During that mediation session, the County offered to include K.B. in the mediation.

10)	Judge Novak indicated that that would not be a bad idea since he felt that the plaintiff would institute administrative proceedings in behalf of K. B. and that it would be preferable if his issues could be resolved along with that of his brother who was a party to the action brought by the plaintiff.

11)	At that mediation. the parties agreed to have the Plaintiff's children evaluated by Dr. Steven Butnik. and thereafter to convene IEP meetings for both of her children to discuss the necessity and provision of special services for each child through Chesterfield County Public Schools.

12)	On or about June 10, 2020, plaintiffs' counsel sent an email to counsel for Chesterfield

seeking an update of the evidence to resolve the matter and requested a conference with Judge Novak. In the email, plaintiff counsel stated:

> We reconvened two separate sessions of IEP meetings (totaling over 4 hours) for… [KB and PB]. Chesterfield County Public schools as determined that it wants to conduct further evaluations of the boys to determine whether they are eligible for special education services. Ms. Bolton believes that this additional testing is not necessary based upon Dr. Budnick's findings. Further, if any additional testing is to be done, Ms. Bolton would prefer to have a neutral party administer the test for the same reason that we agreed to have Dr. Budnick evaluate the boys originally. CCPS has indicated that it will not bear the cost of any further testing by a neutral party. Given we are at something of an impasse, we would like to convene a call with Judge Novak in hopes of facilitating the past forward. Ms. Bolton is asked me to express that she would like to join the conference and speak with Judge Novak directly to explain her reasons for concern about the County's proposed approach. Please let us know of Judge Novak is willing to convene such a call, whether he would prefer to have all parties on line or speak individually with each side, and whether he would like any additional information related to the parties' progress thus far."

13) No effort was made by Chesterfield to facilitate such a conference with Judge Novak and none was conducted.

14) On or about Jun 15, 2020 counsel for the plaintiffs sent the following request to Dr. Butnick: "We have a call l scheduled with Judge Novak on Wednesday morning to work toward a Butnik resolution with the County. Could you let me know what recommendations you gave to the County?"

15) Dr. Butnick responded with the following statements:

> Keagan needs the structure and integrity of a program like Faison's. Also, this would also be a good setting to help him adjust to having been out of a formal school setting for such a long time. For Parker, the key need is to address his phonological processing weaknesses. He needs a reading program that uses a Structured Literacy approach <https://dyslexiaida.org/what-is-structured-literacy/>
> A suitable program also would support Parker's emotional and behavioral issues. A school like Riverside would be great for the

3

>reading needs, but I am not sure how they would respond to his
>other needs. It is possible that the County could
>put together a suitable program (that includes a proper approach to
>Parker's phonological problems). I don't believe there is any
>evidence that Parker has failed to progress academically in a well-
>executed County program. It is unknown how Parker would adjust
>emotionally or behaviorally to a County program.
>The wild card, I suspect, is Mrs. Bolton's antipathy toward
>Chesterfield Schools. However, I am not sure if or how that
>variable can be considered in these decisions.
>I would like to see the County work (i.e., bend over backward) to
>address the problems that Parker experienced that led to Mrs.
>Bolton's negative feelings.

16) On June 24, 2020, the parties reconvened a mediation session before Judge Novak during which the parties agreed that the School Board would draft proposed IEP·s for each of Plaintiffs children and present them to Plaintiff for review and consideration.

17) On July 11, 2020, counsel for Chesterfield provided plaintiff's counsel with proposed IEPs developed by Chesterfield for KB and PB along with a proposed settlement agreement.

18) The IEP's done for KB and PB list the persons who were present at an alleged IEP meeting which included the plaintiff, Benjamin Lewis, identified as a "Special Education Specialist", and attorneys for the parties, Hal Johnson and Catherine Ballou.

19) The failure to include such a person or persons violated "Regulations Governing Special Education Programs for Children with Disabilities in Virginia", 8 VAC 20-81C1d (1) which requires that an IEP team include a representative of the local educational agency who is: "qualified to provide or supervise the provision of special designated instruction to meet the unique needs of children with disabilities…"

20) Benjamin Lewis had no such qualifications although Chesterfield employed persons in its Special Education Department who had experience, training or endorsements in the disabilities referred to above and who should have been assigned as a member of her child's IEP team.

21) The above CFR also requires that the IEP team consists of "one regular education teacher of the child"; "[n]ot less than one special education teacher of the child"; "[a] representative of the local education agency who is [q]ualified to provide or supervise the provision of special the design instruction to meet the unique needs of children with disabilities"; and "[a]n individual who can interpret the instructional implications of evaluation results. This individual may be a member of the team serving in another capacity other than the parent of the child".

22) There were no persons on the IEP team who had specific expertise or training with the disabilities which petitioner's children suffered.

23) On or about August 4, 2020, Plaintiff's counsel advised Chesterfield's counsel of the following concerns of plaintiff in consenting to the proposed IEP's as follows:

> Ms. Bolton continues to believe that an IEP meeting would help her understand the ins and outs of the proposed IEP's the County drafted. What was agreed to at mediation was that the County would put a plan on paper so that Ms. Bolton could evaluate what services were being offered for her boys. The IEP's CCPS provided are a good step in that direction, but there's not much detail about what the boys' experience will actually be like.
>
> Ms. Bolton is reluctant to sign additional paperwork unless and until final, mutually agreeable IEPs are developed. She is concerned that the County is insisting on this as a way to get her to waive current rights. The fact that the County won't have an IEP meeting to discuss its proposed plan of attack lends some credence to her concerns.

24) On August 19, 2020 the Court entered an Order requiring the plaintiff to explain her failure to file a response to the County's Motion to Dismiss and a Show Cause as to Why the Court Did Not Grant the Motion to Dismiss, Giving the Plaintiff 21 Days after entry of the Order and admonishing the Plaintiff that failure to follow the Courts' direction shall result in dismissal of her case without prejudice.

25) On August 21, 2020, plaintiffs' counsel sent the following request to counsel for Chesterfield:

> Please let me know where we stand on this. I first suggested that
> we reconvened the IEP teams on July 23. We still have not
> received any indication whether and when the County will agree to
> such a meeting. I am confident that the County is not simply
> stonewalling, but I cannot think of a good faith basis for the
> County to reject Ms. Bolton's request to convene the IEP team so
> that she can get a better understanding of the County's proposed
> IEP's. Given the court's reason orders, this request obviously has
> some urgency.

26) No effort was made to reconvene the IEP teams thus the plaintiff was denied the opportunity to get a better understanding of the County's Proposed IEP's.

27) On September 25, 2020 Granted the Motion to Dismiss and dismissed the case without prejudice. The Court also granted plaintiff leave to file a 2nd amended complaint no later than October 30, 2020. The Court also admonished the plaintiff that failure to comply with the Court's directives would result in DISMISSAL WITH PREJUDICE of this action.

28) October 6, 2020, counsel for Chesterfield sent to counsel for the plaintiff a letter stating that because Judge Lauck dismissed without prejudice the Amended Complaint and that on August 26, 2020, the Court ended its supervision of the mediation between the parties and because the parties were unable to reach a resolution the County declines to participate in further settlement discussions with Ms. Bolton.

29) Ms. Bolton had a conversation with her counsel as things were drawing to a close who told her he had just had a conversation with counsel for the County, Patrick Andriano who told him that no order for the County to implement the IEPs for both of her sons that she would have to sign an agreement that she would not sue CCPS on behalf of the boys in the future.

30) The plaintiff explained to her attorney and she did not sign or stipulate to such an agreement because her sons were too young.

31) The plaintiff's husband and her mother overheard her counsel report this stipulation/condition made by Andriano.

32) This demand or stipulation made by Andriano was outrageous, unreasonable and clearly illegal such that it constituted sanctionable misconduct on the part of the County and thus, the County intentionally, willfully and deliberately sabotaged and torpedoed the mediation process which requires this Court to sanction the County which should include both injunctive and compensatory relief to the plaintiffs on behalf of her sons who were denied FAPE.

33) On November 17, 2020 the Court entered an order dismissing with prejudice the amended complaint and ordered the Clerk to close the case.

## COUNT II

### (Appeal of Decision in K.B.'s Due Process Proceeding)

34) Plaintiffs restate and reallege the preceding paragraphs and incorporate them by reference herein.

35) On May 5, 2021, the Parent requested an IDEA administrative due process hearing.

36) On May 17, 2021, the Chesterfield filed a Motion to Dismiss.

37) The HO issued witness subpoenas requested by the Parent for the evidentiary hearing.

38) Harold Johnson, former legal counsel for the Parent, responded to the subpoena advising the HO that "because that settlement conference was a confidential process, I do not believe I can testify regarding any matters related to my representation of Ms. Bolton without a court order authorizing me to do so".

39) The HO refused to require Johnson to attend anticipated in the due process hearing and as a result, plaintiff was deprived of putting on the record the sanctionable conduct of Chesterfield which would have been the basis for denying the confidentiality argument of Chesterfield.

40) The Chesterfield's attorneys through a Motion in Limine agreed to the confidentiality of the process and requested that the HO exclude evidence related to the federal court mediation process.

41)     The HO ruled that he would exclude evidence related to the federal court mediation and settlement efforts.

42)     One of the advocates for the parent bought to the attention of the HO that because the style of the federal case was "[Parent], as parent and next friend of K.B., that confidentiality to not extend to PB.

43)     The HO disagreed and extended the confidentiality to PB.

44)     The HO consistent with that ruling determined that PB was not a student with a disability, and was therefore not eligible for an IEP; that the parent's refusal to allow Chesterfield to evaluate PB; her removal of PB from Chesterfield schools; and the Parent's claims to private day placement at public expense must also be dismissed as premature.

45)     At the conclusion of the evidentiary hearing, the HO granted Chesterfield's Motion to Dismiss and Motion in Limine and dismissed administrative due process proceeding.

46)     This ruling by the HO was not regularly made because it deprived the plaintiffs of establishing sanctionable conduct by LEA counsel with lead to the proposed IEPs failing to meet the requirements of IDEA.

**WHEREFORE**, Petitioners ask that this Court enter judgment against Chesterfield as follows:

With regard to the allegations set forth in **Count 1**:

1.      Find that counsel for Chesterfield committed sanctionable conduct in the mediation including but not limited to procedural violations of the IDEA which denied Petitioners' children FAPE.

2.      Award plaintiffs' compensatory damages in the amount of $1 million; punitive damages in an amount of $350,000.

3.       Award allow a plaintiffs' less petitioner's reasonable attorney fees and their taxable costs.

8

4. Grant plaintiffs such other and further relief as this Court deems appropriate.

With regard to the allegations set forth in **Count 2:**

5. Reverse the findings of the Hearing Officer and enter judgment that the petitioners are the prevailing parties in this due process action.

6. Award Petitioners' counsel reasonable attorney's fees

7. Award Petitioners such other and further relief as is proper.

8. Grant plaintiffs such other and further relief as this Court deems appropriate.

                    Respectfully submitted,

                    Melissa Bolton, by and in behalf of K. B. And P. B.

                    By_____/s/_____

Bernice Stafford Turner
Bernice Stafford Turner (VSB# 31511)
P.O. Box 25852
Richmond, VA 23260
(804)218-4357
bestlawyerinrva@outlook.com

Trial by Jury Is Requested