IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

K.B. and P.B., Minors,
by and through their
mother and next friend,
MELISSA SIDDIQI, née BOLTON,

    Plaintiffs,

v.                                                           Civil Action No. 3:21cv602

CHESTERFIELD COUNTY
PUBLIC SCHOOLS, et al.,

    Defendants.

**MEMORANDUM OPINION**

This matter is before the Court on PLAINTIFFS' MOTION TO RECUSE ASSIGNED JUDGE (ECF No. 18), PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO RECUSE ASSIGNED JUDGE (ECF No. 19) (collectively the "Recusal Motion"), PLAINTIFF'S' [sic] SUPPLEMENTAL BRIEF IN SUPPORT OF RECUSAL MOTION (ECF No. 33), RESPONSE BRIEF OF DEFENDANTS TO PLAINTIFFS' MOTION TO RECUSE ASSIGNED JUDGE (ECF No. 39), RESPONSE BRIEF OF DEFENDANTS TO PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF RECUSAL MOTION OF ASSIGNED JUDGE (ECF No. 40), and PLAINTIFFS' REPLY BRIEF (ECF No. 43). Having considered the foregoing and the AMENDED COMPLAINT (ECF No. 2), it is hereby ORDERED that, for the reasons set forth below, the PLAINTIFFS' MOTION TO RECUSE ASSIGNED JUDGE (ECF No. 18) will be denied.

## BACKGROUND

K.B. and P.B., minors who are suing by and through their mother and next friend, Melissa Siddiqi, nee Bolton ("Bolton"), filed this action, pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, et seq. ("IDEA"), against the Chesterfield County Public Schools (a misnomer)[1] and Amanda Simon, individually and in her capacity as a school social worker. The action originally named Dr. Tynisa M. Giles as a defendant but, pursuant to a NOTICE OF DISMISSAL (ECF No. 22), the action has been dismissed as to Dr. Giles.

### 1. The 2019 Case (No. 3:19cv558)

On August 4, 2019, Bolton, as parent and next friend of K.B., acting *pro se*, filed an IDEA action in this Court against the Chesterfield County School Board and Robert W. Thompson, its Chairman. See Bolton v. Chesterfield Cnty. Sc. Bd., No. 3:19cv558 (E.D. Va. Nov. 17, 2020). Upon a referral to then-United States Magistrate Judge David J. Novak, efforts were made to attempt to compromise the litigation, but those efforts were unsuccessful. For reasons set forth in a Memorandum Opinion (ECF No. 21), the District Court[2] granted the defendant's MOTION TO DISMISS (ECF No. 8) and dismissed the Amended Complaint (ECF No. 5) without

---

[1] The correct defendant is the Chesterfield County School Board.

[2] The Honorable M. Hannah Lauck presiding.

prejudice, affording Bolton leave to file a Second Amended Complaint by October 30, 2020. See Docket No. 3:19cv558. The ORDER of dismissal instructed Bolton as follows:

> The Court ADVISES Bolton that failure to strictly comply with the Court's directives and with applicable rules WILL result in DISMISSAL WITH PREJUDICE of this action.

Id. at ECF No. 22. Because there was no Second Amended Complaint filed by October 30, 2020, the Court issued a FINAL ORDER dated November 17, 2020, dismissing the action with prejudice. Id. at ECF No. 23.

**2. The Present Case (No. 3:21cv602)**

Thereafter, in March 2021, Bolton instituted an administrative proceeding as to K.B. and P.B. ("a due process hearing") under IDEA. The administrative Hearing Officer issued a decision on June 19, 2021, and then Bolton filed this action on September 17, 2021 "on behalf of K.B. and P.B., her minor children as their mother and next friend". COMPLAINT (ECF No. 1). After some delays in securing service of process, Bolton filed an AMENDED COMPLAINT (ECF No. 2) on December 9, 2021. Again, Bolton said that she was filing the action "on behalf of K.B. and P.B., her minor children as their mother and next friend."

In its "JURISDICTION" section, the Amended Complaint recites that it is brought pursuant to the "4th Amendment to the United States Constitution; 20 U.S.C. § 1415(i)(2)(A); 28 U.S.C. § 1331

3

[Federal Question], 2201 and 2202 [Declaratory Judgment]."³ It also says that "42 U.S.C. § 1983 and 1988 applies only to Count V."

There is federal question jurisdiction over any claim(s) brought under IDEA or pursuant to 42 U.S.C. § 1983. To what that jurisdiction extends, if, indeed, it exists, depends on the actual text of the Amended Complaint, and, as explained below, the Amended Complaint is quite confusing. As a result, it also is not possible to say with any certainty that all, or perhaps any, of the five counts satisfy the requirements of Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). But those are matters for another day. Nonetheless, it is appropriate to determine what is intended by the Amended Complaint to assure that, at least at this stage of the proceedings, there is subject matter jurisdiction and to understand the Recusal Motion.

---

³   The Declaratory Judgment statute, 28 U.S.C. § 2201 et seq., does not afford federal court jurisdiction, either as to subject matter or in personam.

### 3. The Amended Complaint in this Case

The Amended Complaint presents five counts. COUNT 1 [sic][4] which is summarized as "Mediation Efforts by the Parties" recites information about the mediation of the 2019 case (No. 3:19cv558). AMENDED COMPLAINT at 2 (ECF No. 2). However, COUNT I does not actually state any claim, at least not one that is apparent or discernable on a reading of its text. Id. ¶¶ 7-55.

COUNT II is summarized as "Appeal of Decision in KB's Due Process Proceeding." Id. at 12. However, to the extent that the text of COUNT II refers to either minor, it refers only to "PB." Id. ¶¶ 65-66. The effect of that anomaly is also for another day. In any event, it is quite difficult to discern what claim is being presented in COUNT II.

In its concluding paragraph, this count says:

> Neither of these rulings [by a Hearing Officer] were regularly made because with [sic] the Chesterfield's motions filed in the due process hearing were grounded on its sanctionable conduct as set forth in C[OUNT] I.

Id. ¶ 69. This reference to COUNT I in paragraph 69 is perplexing. Although COUNT I presents many allegations about, and uses language critical, of the defendants, it does not actually identify any conduct that is described as "sanctionable."

---

[4] This should be COUNT I because all other counts are identified by roman numerals, as is the first count when it is referred to in COUNT II. ECF No. 2 ¶ 69.

The paragraphs preceding paragraph 69 refer to several rulings by the Hearing Officer in the due process hearing that is the subject of COUNT II. The rulings mentioned are:

(1) Refusal to require Bolton's counsel in the 2019 case to attend K.B. due processing hearing;

(2) Exclusion of evidence about the mediation and settlement efforts in the 2019 case;

(3) Deciding that P.B. was not a student with a disability and thus not eligible for an individualized education plan ("IEP");

(4) Granting Chesterfield School Board's motion to dismiss the claim presented in the administrative hearing;

(5) Holding that "only licensed attorneys, not advocates could represent a parent or child in pure § 504 cases."

Id. ¶¶ 61-81. The phrase "due process" is mentioned in paragraph 67, but none of the rulings complained of are identified as deprivations of due process of law. In sum, it is not possible to discern what COUNT II is really about.

COUNT III is summarized as "Illegal and Unlawful Denial of Private Placement." Id. ¶¶ 70-75. This count appears to be brought under IDEA because K.B. and P.B. were denied placement in a private school (a possible remedy under IDEA) allegedly because Bolton refused to allow the minor children to be evaluated by the School Board's personnel respecting the eligibility for private placement. COUNT III seems to be based on Bolton's view that the School Board was required to, but did not, accept, without

6

question, the eligibility determination that had been made by a clinical psychiatrist as part of the mediation proceedings in the (dismissed) 2019 case.

COUNT IV is summarized as "Illegal and Unlawful and Denial of Medical Homebound." Id. ¶¶ 76-82. This count does not identify a statutory or constitutional source. It simply alleges that, in August 2019, a psychiatrist had "assigned medical certifications for K.B. and P.B. that they were in need of homebound instruction," which, under certain circumstances, is available under IDEA. Id. ¶ 77. COUNT IV then alleges that the principal at Wells Elementary School illegally disenrolled K.B. and P.B. from that school because the principal concluded that they were not residents of the district served by that school. Id. ¶¶ 80-82. That, in turn, it is said, resulted in the denial of the requests for homebound schooling. Id. ¶ 82.

It is not possible from the Amended Complaint to discern what the principal did that is thought to have been a violation of IDEA or any other law. Nor is it possible to discern what law or legal right was thought to have been offended by the principal's decision.

The last claim presented is in COUNT V which is summarized as "1983 and State Tort Claims of Abuse of Process and Malicious [sic] of Plaintiff for Truancy." Id. ¶¶ 83-97. It is said that: "[t]his Count applies only to Plaintiff Siddiqi, nee Bolton." Id. ¶ 84.

7

It is not readily apparent how Bolton can present in this case a claim in her own right when she is only suing as "mother and next friend". Id. at 1 (caption); see id. ¶ 5 (PARTIES). Certainly, that is not discernable from the text of the Amended Complaint. Nor is the Court aware of any legal principle that would allow Bolton to so proceed.

Nonetheless, it is alleged that:

> [b]oth Simon and Giles in obtaining criminal complaints for truancy against the Plaintiff improperly used this criminal legal procedure for an unintended, malicious, and a perverse reason, to retaliate against Plaintiff for her vigorous advocacy of the educational rights of PB and RB [sic].

Id. ¶ 96. And, it is further alleged that:

> [b]oth Simon and Giles in obtaining criminal complaints for truancy against the Plaintiff did so without probable cause, and malice. The fact that both prosecutions ended in a manner not unfavorable to the Plaintiff establishes that Simon and Giles were engaged in maliciously prosecuting the plaintiff.

Id. ¶ 97.

These conclusory allegations may, or may not, satisfy the requirements of Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), but, for purposes of understanding COUNT V, it seems that the obtaining of a truancy warrant for Bolton on May 20, 2019 lies at the core of the claim intended to be presented in COUNT V. The availability of such a claim to Bolton will have to be addressed later.

8

### 4. Subject Matter Jurisdiction

Whatever the result of subsequent analysis respecting legal sufficiency may be, a Section 1983 claim that is asserted solely on behalf of Bolton (here, COUNT V) cannot supply subject matter jurisdiction in a case brought by Bolton or behalf of, and as next friend to, her minor children. Nor can subject matter jurisdiction be grounded in a count that asserts no discernable claim at all (COUNT I).

However, COUNTS II, III, and IV, confusing though they are, seem to be based on IDEA. Thus, at least at this stage, there appears to be federal question jurisdiction.

### 5. The Recusal Motion

There being apparent subject matter jurisdiction, and mindful of the assertions in the Amended Complaint, the Court turns to the matter immediately at hand: the Recusal Motion (ECF No. 18). The predicate for the requested recusal is that Bolton intends to call Kandise Lucas ("Lucas") as a witness in this case. As originally presented in the Recusal Motion, the assigned judge "must be disqualified because of his previous actions and rulings in Henrico Cnty. Sch. Bd. v. Matthews, Civil Action No. 3:18-cv-110 (E.D. Va. Oct. 2, 2019)" (the "Matthews case"), which renders it impossible for the assigned judge to fairly assess the credibility of Lucas. ECF No. 19 at 2. The text continues: "One of his rulings involved Kandise Lucas . . . ." Id. The Recusal Motion then identifies

9

the specific rulings in the <u>Matthews</u> case, which are thought to necessitate recusal:

> Judge Payne ruled that '<u>Lucas testified falsely</u> when she claimed that a Richmond Times Dispatch reporter had misquoted her in a news article.' Judge Payne also ruled that Ms. Lucas testified falsely when she claimed that the reporter 'wrote down the wrong thing,' and quoted her wrong.
>
> Judge Payne also ruled that Lucas knew that her <u>statements were untrue</u> when she made them and:
>
> 'a reasonable and fair <u>sanctions</u> [sic] for Lucas to pay $1,000.00 to the Clerk of Court . . . [and] [i]n addition, <u>because Lucas made a misrepresentation</u> in a court filing and gave false testimony in the hearing on sanctions . . . ., she has made it necessary to take action to vindicate judicial authority . . . [which] . . . is best accomplished by <u>enjoining Lucas</u> from participating in any future proceedings in this Court that involve the IDEA.'[5]

<u>Id.</u>[6] (emphasis added).

---

[5] In the <u>Matthews</u> case, the Court did indeed issue an injunction, the exact text of which reads: "Kandise Lucas is enjoined from participating in any way, directly or indirectly, in any case filed in the Court under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 <u>et seq</u>." No. 3:18-cv-110 (ECF No. 221, as amended by ECF No. 222).

[6] Bolton acknowledges that "Lucas appealed the decision and sanctions" and that the United States Court of Appeals for the Fourth Circuit "'affirm[ed] for the reasons stated by the district court.'" <u>Id.</u>

Having originally featured the findings in the Matthews case respecting false testimony given by Lucas (and the resulting sanctions) as the basis for the requested recusal, the Recusal Motion then seems to shift focus by noting that Lucas had filed "two judicial complaints" about the assigned judge and made very detailed remarks that were highly critical of the assigned judge and "his judicial demeanor, his racial insensitivity and other unflattering remarks about his character, and demeanor." Id. at 3-4. And, therefore, says the Recusal Motion, the assigned judge "will have to hear and decide on Ms. Lucas' credibility which plaintiffs contend will be virtually impossible for him to be impartial in deciding her credibility [sic] given the two judicial complaints she filed against the assigned judge." Id. at 3 (emphasis added). Thus, by the end of the Recusal Motion, recusal was asserted to be necessary because of the two judicial complaints filed by Lucas which, according to Bolton, would make it impossible for the assigned judge impartially to assess Lucas's credibility.

Then, in PLAINTIFFS' REPLY BRIEF (ECF No. 43), Bolton clearly withdraws from consideration as a basis for recusal "the previous actions and rulings [of the assigned judge] in"[7] the Matthews case. Specifically, in the reply brief, Bolton says:

---

[7] PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO RECUSE ASSIGNED JUDGE (ECF No. 19 at 2).

11

> Plaintiffs contend that Judge Payne's impartiality is in question in this case <u>not because of his ruling against Ms. Lucas</u> in the underlying case <u>but in her 'unvarnished' criticism against him which she lodged against him in the Fourth Circuit Court of Appeals</u>. Her criticisms were sent to Judge Payne for his comments. The fact that the Fourth Circuit did not find any validity in her criticisms is not controlling. What is controlling is the fact that she made them[,] and Judge Payne was aware of them which creates a reasonable factual basis for questioning Judge Payne's impartiality towards her.

ECF No. 43 at 2-3 (emphasis added).

## DISCUSSION

Recusal is sought because Bolton intends to call Lucas as a witness in the case. However, the Amended Complaint makes no reference to Lucas; and neither the Recusal Motion nor the supporting brief identified what Lucas might be called upon to say as a witness. Accordingly, by ORDER (ECF No. 31) entered herein on January 21, 2022, the Court ordered Bolton to:

> file a Supplemental Brief in Support of Recusal Motion and therein shall explain in detail <u>what testimony Ms. Lucas would be expected to give</u> in this case and why, given the injunctive provisions cited above, Ms. <u>Lucas's testimony would not constitute direct or indirect participation</u> in a case filed under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, <u>et seq.</u>

ECF No. 31 (emphasis added). In response to that ORDER, Bolton filed PLAINTIFF'S' [sic] SUPPLEMENTAL BRIEF IN SUPPORT OF RECUSAL MOTION (ECF No. 33). That supplemental brief does not comply with

the requirements of the ORDER because the response does not "explain in detail what testimony Ms. Lucas would be expected to give in this case and why . . . Ms. Lucas's testimony would not constitute direct or indirect participation in a case filed under" IDEA in this Court. ECF No. 31 at 2.

However, the response does assert that K.B. and P.B. were subjected to illegal and unlawful "disenrollment and were denied medical homebound" and that Lucas is "a key witness to what transpired and how these events [disenrollment and denial of medical homebound] were carried out by Chesterfield." ECF No. 33 at 1. Lucas is alleged to be a witness because "Kandise Lucas was the <u>sole advocate</u> representing the parent and children doing administrative proceedings." <u>Id.</u> (emphasis added). That assertion seems to be an error because it appears from the Hearing Officers' decisions (ECF Nos. 37-1 and 37-2) that Lucas was not the sole advocate in the due process hearings because two advocates are listed as participating.

What the response does show is that Lucas's participation would constitute direct participation in an IDEA case in this Court, something that the injunction prohibits. Thus, the Recusal Motion fails for lack of a predicate: Lucas cannot be a witness and, therefore, the assigned judge will not be required to assess her credibility.

13

Apparently recognizing that rather obvious circumstance, Bolton argues that the injunction against Lucas "was entered 6 weeks after the matters set forth in Count IV [of the Amended Complaint]." Id. Thus, says Bolton, applying the injunction here would be an "impermissible retroactive effect." Id. That refrain is reflected in Bolton's reply brief (ECF No. 43) filed on February 28, 2022. To apply the injunction, in Bolton's view, would offend the rule announced in Landgraf v. USI Film Prods., 511 U.S. 244, 270 (1994) (cited with approval In re Jones, 226 F.3d 328, 331 (4th Cir. 2000)). In Bolton's words, to apply the injunction to foreclose Lucas from testifying here "would have an 'impermissible retroactive effect' and therefore violate 'familiar considerations of fair notice, reasonable reliance, and settled expectations.'" ECF No. 33 at 2. That argument lacks merit.

To begin, the retroactivity principle of Landgraf applies to the acts of Congress. In fact, Landgraf actually establishes a three-part analysis to assess the potential retroactive effect of a statute enacted by Congress. 511 U.S. at 244; Ward v. Dixie Nat'l Life Ins. Co., 595 F.3d 164, 172 (4th Cir. 2010) (to the same effect); Gordon v. Pete's Auto Serv. of Benbigh, Inc., 537 F.3d 454 (4th Cir. 2011). So, Landgraf does not apply here.

Moreover, the injunction was issued in 2019. The Hearing Officer's due process decision in this case occurred on June 19, 2021, long after the effective date of the injunction order. ECF No. 37-1. And, this case was filed on December 14, 2021, more than two years after the injunction was entered. Thus, there is no retroactive application of the injunction.

Finally, since October 2, 2019, Lucas has known that she was enjoined from participating directly or indirectly in any IDEA case in this Court. See No. 3:18-cv-110, ORDER (ECF No. 221). It was her responsibility to inform her clients that she was thusly enjoined. Indeed, it was Lucas's responsibility not to take on a role that would put her in violation of the injunction.

Furthermore, if, at the time of the injunction, Lucas was assisting Bolton in an IDEA proceeding, Lucas was obligated to make clear that she could not be a witness in an IDEA case in this Court because that would be direct participation in violation of the injunction. If Lucas did not do so, her failure visits on Bolton the consequence that Bolton cannot call Lucas as a witness in this case. That circumstance is entirely the fault of Lucas, but Lucas cannot evade the prohibitory effect of the injunction by simply plowing ahead as if it did not exist.

15

**CONCLUSION**

For the foregoing reasons, the PLAINTIFFS' MOTION TO RECUSE ASSIGNED JUDGE (ECF No. 18) will be denied because the premise upon which it is brought (that Lucas will testify in the proceedings) is not valid. Accordingly, it is not necessary to further address the general principles respecting recusal that are presented in the various briefs supporting and opposing the Recusal Motion.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: March 29, 2022