IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

K.B. and P.B., Minors,
by and through their
mother and next friend,
MELISSA SIDDIQI, née BOLTON,

    Plaintiffs,

v.                                    Civil Action No. 3:21cv602

CHESTERFIELD COUNTY
SCHOOL BOARD, <u>et al.</u>,

    Defendants.

**MEMORANDUM OPINION**

This matter is before the Court on the MOTION TO DISMISS (ECF No. 26) (the "MOTION") filed by the defendant, Chesterfield County School Board ("School Board"), which is erroneously sued as "Chesterfield County Public Schools."[1] Having considered the MOTION, the supporting, opposing, and reply memoranda (ECF Nos. 27, 36, and 38) and, for the reasons set forth below, the MOTION TO DISMISS (ECF No. 26) will be granted.

---

[1]   The School Board treats the misnomer as an error and has appeared herein to answer and to seek dismissal. As instructed, the Clerk has changed the name "Chesterfield County Public Schools" to "Chesterfield County School Board" by previous ORDER. <u>See</u> Order (ECF No. 50).

## BACKGROUND

This action commenced on September 17, 2021 when a COMPLAINT was filed on behalf of "K.B. and P.B., minors, by and through their mother and next friend Melissa Siddiqi, nee Bolton ("Bolton"). The COMPLAINT (ECF No. 1) was filed by counsel (Bernice Stafford Turner).   The docket sheet reflects that thereafter, the Clerk communicated with counsel about the need to file a summons.   The next entry on the docket sheet occurred more than two months later on December 9, 2021 when the AMENDED COMPLAINT (ECF No. 2) was filed.

The AMENDED COMPLAINT also named as a defendant Tynisa M. Giles.   Giles, who is named only in Count V of the AMENDED COMPLAINT, filed a MOTION TO DISMISS (ECF No. 13) for failure to state a claim upon which relief could be granted and shortly thereafter, counsel for Bolton filed a NOTICE OF DISMISSAL (ECF No. 22) pursuant to Fed. R. Civ. Proc. 41(a)(1)(A)(i).   The case against Ms. Giles has been dismissed.

As a result, the only remaining defendants are Amanda Simon, individually and in her capacity as School Social Worker for Chesterfield County Public Schools, and the Chesterfield County School Board.   An examination of the docket sheet indicates that a summons has never been issued for, or served on, Simon and that Simon is not represented herein.   Given that Bolton has not secured service of process on Simon, the action, as to Simon will be

dismissed without prejudice.

The AMENDED COMPLAINT in this case is quite difficult to understand.  The task of understanding this case and its AMENDED COMPLAINT, is to some extent assisted by knowing that there was a somewhat related case in 2019 (the "2019 Case") filed by Bolton on behalf of K.B. as his "parent and next of friend."  Indeed, the AMENDED COMPLAINT in this case refers extensively to various events that took place in the 2019 Case.  Hence, a brief understanding of the 2019 Case is necessary.

**A.    The 2019 Case**

In 2019, acting *pro se*, Bolton filed a Complaint under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq.  It was styled <u>Melissa Bolton, as parent and next friend of K.B. v. Chesterfield Cnty. Sch. Bd.</u>, No. 3:19cv558 (E.D. Va. Nov. 17, 2020).  Like the COMPLAINT (ECF No. 1) in the 2019 Case, the AMENDED COMPLAINT in that case ran some 50 pages.  The original COMPLAINT contained 129 paragraphs and the AMENDED COMPLAINT contained 128 paragraphs.  <u>See</u> No. 3:19cv558, <u>compare</u> Compl. (ECF No. 1) <u>with</u> Am. Compl. (ECF No. 4).

The AMENDED COMPLAINT in the 2019 Case asserted that "this action is brought <u>to appeal the aspects of the May 6, 2019 and June 8, 2019 decisions of the administrative Hearing Officers</u> in the special education due process case of K.B. (or 'Student')." <u>See</u> No. 3:19cv558, Am. Compl. ¶ 1 (ECF No. 4) (emphasis added).

3

And, indeed, in the 2019 Case, Bolton sought reversal of an Administrative Hearing Officer's ("Hearing Officer's") decisions in an IDEA due process hearing that addressed, inter alia, K.B.'s eligibility determination under IDEA; K.B.'s request for private placement at public expense at the Faison Center for Autism; a request for reimbursement of tuition and transportation expenses associated with an alleged prior placement of K.B. in a private preschool, work samples, and evaluation protocols; a demand for two years of compensatory educational services; and a demand for an alteration of Chesterfield County's special education policies and procedures.

On August 26, 2019, the presiding judge in the 2019 Case ordered that the parties participate in a settlement conference with then-Magistrate David J. Novak.[2]   Because Bolton was proceeding *pro se* and the case involved a minor, the Court appointed a lawyer (Harold E. Johnson, Esquire of Williams Mullen) for the limited purpose of providing advice to Bolton during the settlement conference.   The case was not settled.

In the 2019 Case, the School Board filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), inter alia. See No. 3:19cv558, Mot. Dismiss (ECF No. 8).   In that document, the School Board afforded the warning required by Local Civ. R. 7(K) and

---

[2]   See No. 3:19cv558, Order (ECF No. 7).

4

Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) which, inter alia, instructed Bolton that the "Court could dismiss the action on the basis of the moving party's papers if the pro se party does not file a response."  On September 25, 2020, the Court entered an order dismissing, without prejudice, the 2019 Case for failure to state a claim upon which relief could be granted.   No. 3:19cv558, Order (ECF No. 22).  However, Bolton was given leave to file a Second Amended Complaint, and she was instructed that it must be filed not later than October 30, 2020.  The Court further advised Bolton that "failure to strictly comply with the Court's directives and with applicable rules WILL result in DISMISSAL WITH PREJUDICE of this action."  Id.  However, Bolton did not file a Second Amended Complaint.  Thus, on November 17, 2020, the Court entered a FINAL ORDER dismissing the 2019 Case with prejudice. See No. 3:19cv558, Final Order (ECF No. 23).

Various events that occurred during the settlement process in the 2019 Case comprise the essence of what is described in Count I of the COMPLAINT and the AMENDED COMPLAINT in this case.[3] Indeed, in Bolton's view "the causes of action in this case [not just Count I] were the result of a federal mediation which

---

[3]    Both the COMPLAINT and the AMENDED COMPLAINT in this case use Arabic number 1 for the first count and Roman numerals for ensuing counts.   Bolton's briefs tend to use Roman numerals.   The Court will use Roman numerals.

Chesterfield sabotaged . . .".  Pls.' Opp'n Def.'s Mot. Dismiss ¶ 1 (ECF No. 36).

## B.   The Current Case

On March 19, 2021, four months after the 2019 Case had been dismissed with prejudice, Bolton submitted a request for another due process hearing (the "March 10 Due Process Hearing") as to K.B.  The Hearing Officer issued his decision in that due process hearing on April 23, 2021.  See Ex. A (ECF No. 37-1).  Therein, the Hearing Officer decided that:

> (1)  any actions complained of before March 19, 2019 were barred by the statute of limitations;
>
> (2)  the two due process requests decided on May 6, 2019 and June 8, 2019 (which had been appealed to the United States District Court in the 2019 Case which, as explained above, had been dismissed with prejudice) were foreclosed by the "doctrine of collateral estoppel or issue preclusion" by virtue of the decision issued in the 2019 Case;
>
> (3)  all of the communications and the efforts to settle the 2019 Case were confidential because they were either settlement negotiations, offers, rejections, counteroffers, etc. and were "simply not admissible to deal with the School Board's motion to dismiss";

(4) the request for special educational services and a Free Appropriate Public Educate ("FAPE") under IDEA presented in the March 19, 2021 request for due process hearing by Bolton were premature because Bolton had voluntarily removed the student from the Chesterfield County school system and had refused to allow the School Board to conduct its own evaluation to determine eligibility of the student for FAPE and that, under those circumstances, there was no denial of FAPE;

(5) the student (K.B.) could not be identified as a child with a disability under IDEA until having been evaluated in accord with the evaluation proceedings proscribed by IDEA which, <u>inter alia</u>, permit the School Board a right of evaluation; and

(6) the parent could not make a proper request for placement of the student in a private special education school until eligibility for services under IDEA had been determined which also had been foreclosed by Bolton's decision to refuse to consent to allow the School Board to evaluate the student and removal of the student from the school.

<u>See id.</u> at 11-13.  The Hearing Officer's decision advised that the decision would be "final and binding unless either party appeals in a federal district court within 90 calendar days of the date of this decision, or in a state circuit court within 180 days of the date of this decision."  <u>Id.</u> at 13.

Then, on May 6, 2021, Bolton filed another request for an administrative due process hearing under IDEA as to P.B. (the "May 6 Due Process Hearing").  The decision of the Hearing Officer in that case was entered on June 19, 2021.  <u>See</u> Ex. B (ECF No. 37-2).  In that decision, the Hearing Officer held that:

(1) "settlement negotiations, offers, rejections, counter-offers, etc., are simply not admissible to defeat or thwart the [] LEA[4] motion to dismiss.";

(2) any acts or omissions occurring before May 6, 2019 were barred by the statute of limitations;

(3) the student (P.B.) was not currently classified as a "child with disability" and that therefore the School Board "was appropriate in requiring that the student's enrollment [in a school] prior to providing medical homebound services to him as a general educational student;"

(4) Bolton had voluntarily removed the student from the public schools and refused to allow the public schools to conduct an evaluation to determine the student's eligibility for services under IDEA and refused to grant permission for the school system to evaluate the student, a demand that the student be found eligible under IDEA was premature;

(5) because the student had been removed from the school system, and because Bolton refused to meet with School Board-based teams by phone or any other way, and refused to allow the school system to conduct its own evaluation, and generally had not cooperated, there was no denial of a FAPE because of Bolton's unilateral withdrawal from attendance in the school district and the resulting inability of the school district to evaluate the student; and

(6) as a consequence, the Hearing Officer denied placement of the student in a private special education day school because there was no Individualized Education Plan ("IEP") showing for eligibility for such services.

---

[4] LEA refers to the local education agency, which is Chesterfield County School Board in the present case.

Id. at 7, 9-12.

Almost five months after the Hearing Officer had decided the May 6 Due Process Request (on June 19, 2021) and more than seven months after the Hearing Officer had decided the March 19 Due Process Request (on April 23, 2021), Bolton, through counsel, initiated this action by filing the COMPLAINT (ECF No. 1) in which there was asserted two counts, which are the same as Counts I and II in the AMENDED COMPLAINT (ECF No. 2) and will be discussed in connection therewith.   Then, as explained above, on December 9, 2021, Bolton, through counsel, filed the AMENDED COMPLAINT.

**C.   The MOTION**

The School Board seeks dismissal for five reasons.   First, dismissal is sought under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction as to the entire case because Bolton named the wrong legal entity as a defendant.   Second, dismissal of Counts III and IV is sought for lack of subject matter jurisdiction because Bolton did not exhaust administrative remedies as required by IDEA.   Third, dismissal is sought because P.B. and K.B. have been purportedly misjoined.   Fourth, dismissal of Counts I and II is sought under Fed. R. Civ. P. 12(6) for failure to state a claim upon which relief can be granted.   Fifth, dismissal of Count V is sought because Bolton is a representative and not a named party to the present case.

Further, the School Board seeks attorneys' fees against Plaintiffs' counsel for filing a complaint that is frivolous, unreasonable, and/or without foundation. See Mem. Supp. Mot. Dismiss (ECF No. 27).

**(1)  Prefatory Observations**

This case presents considerable procedural complications, which could have been avoided if the lawyers on each side had undertaken greater study before filing the pleadings with which the Court now has to contend.

For example, the AMENDED COMPLAINT makes allegations suggesting that the claims in this case made are, in essence, the same claims that were dismissed in the 2019 Case. Also, the AMENDED COMPLAINT asserts one claim on behalf of Bolton in her own right, who clearly is proceeding only in a representative fashion (as expressed in the caption and in the substantive allegations of the AMENDED COMPLAINT). Then, in opposing the defendant's MOTION TO DISMISS, Bolton argues that "the causes of action in this case were the result of a federal mediation which Chesterfield sabotaged [and] there is no requirement for the exhaustion of remedies." Pls.' Opp'n Def.'s Mot. Dismiss at 1 (ECF No. 36). In so doing, Bolton suggests that her claim does not arise under IDEA at all, and if that is so, there is no subject matter jurisdiction.

Bolton, this time acting through counsel, sued the wrong entity, whereas, in the 2019 Case, Bolton, proceeding *pro se*, had

named the correct entity.   Also, the allegations of the AMENDED COMPLAINT are muddled and confused, and there is no effort to tie the particular Counts to particular legal predicates.   In sum, the AMENDED COMPLAINT is a "dog's breakfast."

Other problems are presented in the School Board's papers. To begin, the MOTION and its supporting brief offend the rule that one does not combine motions under Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) in the same motion and brief because each motion is analytically quite different and thus, should be discussed and analyzed differently according to the different controlling principles.   Also, the request for dismissal is grounded in part on the assertion that "plaintiffs P.B. and K.B. have been improperly joined in a single action."   However, Fed. R. Civ. P. 21 specifically provides that: "[m]isjoinder of parties is <u>not a ground for dismissing</u> an action." (emphasis added).

Notwithstanding the difficulties presented by the less than exemplary pleadings, it is necessary to sort out the fundamental question of jurisdiction because it is the Court's obligation to do that even if jurisdictional questions are not properly presented.   Further, it is in the interest of justice and judicial efficiency to attempt to resolve matters to the extent that can reasonably be done by discerning what is intended by confused pleadings.

D.   **The AMENDED COMPLAINT**

The starting point for the task at hand is an assessment of the AMENDED COMPLAINT based on its text and in perspective of the arguments made by Bolton in opposing the MOTION.  The latter is necessary because, to some extent, Bolton's response arguments have recast the perception of the AMENDED COMPLAINT that is addressed by the memorandum in support of the MOTION.

   **(1)   Count I**

Following a heading entitled "Mediation Efforts by the Parties," the AMENDED COMPLAINT contains paragraphs 7 through 55 which recite the order in which the 2019 Case proceeded emphasizing the mediation efforts undertaken by then-Magistrate Judge Novak, including the suggestion made by Judge Novak that it would be helpful to resolve issues concerning both minors in the arbitration even though P.B. was not a party to the 2019 case.  It then appears that, during the mediation process, the parties agreed to have both K.B. and P.B. evaluated by Dr. Butnick, a licensed clinical psychologist of considerable repute whose diagnoses and recommendations are recited.  Am. Compl. ¶¶ 14-23 (ECF No. 2).  Count I then makes the point that the School Board having agreed to an evaluation by Dr. Butnick did not just accept the results, and, instead, expressed the need to conduct further evaluation of K.B. and P.B. "to determine whether they were eligible for special education services", a position that, notwithstanding the

12

fundamental precepts of IDEA, appears to have enraged Bolton and prompted the charge that in asking for the further evaluation the School Board was "capricious, arbitrary and made in bad faith." Id. ¶ 26.   That is said to be so "because Dr. Budnick's [sic] evaluations were sufficient to establish that the children were eligible for special education services [and] [sic] further evaluations would be both stressful on the children and clearly were not necessary."   Id.

Nonetheless, after Dr. Butnick's evaluation, the parties reconvened a mediation session wherein it allegedly was agreed that the School Board would draft proposed IEPs for each child and present them to Bolton for review and consideration.   Id. ¶ 29. Apparently, the School Board developed the IEPs and a Settlement Agreement and presented them to Bolton.   Id. ¶ 30.   Those IEPs were thought by Bolton to have been invalid because they violated the provision of Virginia regulation about who should attend such meetings and participate in the development of the IEP.   Id. ¶ 33; see also id. ¶¶ 34-37.

The AMENDED COMPLAINT then chronicles what appears to be the breakdown of the mediation efforts.   Id. ¶¶ 32-55.   As part of this recitation, the following allegation is made:

> The plaintiff was told by her counsel that
> during a conversation he had with counsel for
> the County, Patrick Andriano, that he said
> that since there was no order from the Court
> for the County to implement the IEPs that in
> order for the County to agree to implement the
> IEPs that plaintiff would have to sign an
> agreement that she would not sue the defendant
> on behalf of the children in the future.

Id. ¶ 50 (emphasis added).

There are two allegations that seem to be intended to assert claims (to the extent there are any) in Count I. They are:

> Andriano's condition or stipulation reported
> to her by her counsel was outrageous,
> unreasonable and clearly illegal. Moreover,
> the condition constituted sanctionable
> misconduct on the part of the County because
> in so doing, the County intentionally,
> willfully and deliberately sabotaged and
> torpedoed the mediation process.

Id. ¶ 53 (emphasis added). The second of the apparent predicate assertions is:

> On information and belief, Plaintiff is
> convinced that the Defendant used delay and
> deny as a tactic to intentionally extend the
> mediation beyond the time limitation set by
> the Court knowing that if this happened, the
> Court would do just as it did and dismissed
> the case with prejudice.

Id. ¶ 55 (emphasis added).

### (2)  Count II

Count II challenges the rulings of the Hearing Officer in an IDEA administrative due process hearing requested on May 5, 2021, nearly six months after the Court dismissed the 2019 Case. The

14

due process hearing referred to in paragraph 57 is the subject of a decision issued by the Hearing Officer on June 19, 2021. See Ex. B (ECF No. 37-2). In that decision, the Hearing Officer was asked to decide whether the Court-appointed counsel for the purposes of mediation in the 2019 Case could testify in the due process hearing about what went on during the settlement discussions. On that point, the Hearing Officer held that the "settlement negotiations, offers, rejections, counter-offers, etc., are simply not admissible to defeat or thwart the LEA's [Chesterfield County School Board] motion to dismiss [the due process hearing request]." Id. at 7.

The Hearing Officer also decided that:

> (1)  the request to treat P.B. as a child with a disability within the meaning of IDEA and to secure for P.B. certain services under IDEA was premature; and
>
> (2)  P.B. was not eligible as a student with a disability under IDEA and was not entitled to private day school placement at public expense because Bolton had voluntarily removed P.B. from the Chesterfield County public schools and refused to allow Chesterfield County public schools to conduct its own evaluation to determine P.B.'s eligibility to be treated as a child with a disability under IDEA.[5]

See id. at 10-12.

---

[5]      Bolton's position is that the School Board had to abide by the recommendation of Dr. Butnik made during the mediation. Id. at 10-13.

Count II complains that the ruling granting the School Board's motion to dismiss the due process hearing and the motion *in limine* and dismissing the due process proceeding was "not regularly made because it would be unconscionable to allow Chesterfield to benefit from its earlier misdoings in the mediation part of the case." Am. Compl. ¶ 67 (ECF No. 2). The AMENDED COMPLAINT also asserts that "[n]either of these rulings are regularly made because with [sic] the Chesterfield's [sic] motions filed in the due process hearing were grounded on its sanctionable conduct as set forth in Count I." Id. ¶ 69.

### (3) Count III

In a shift of position, Count III complains about events that had occurred in late 2021. In particular, it is alleged that, on October 28, 2021, Bolton received an "acceptance letter for both of her children to attend Believe-N-U Academic Development Center, a small, private school in Petersburg, Virginia." Id. ¶ 71. Bolton sent the letter to the School Board requesting that "the children be given private placement at the School with the Defendant paying the tuition." Id. ¶ 72. On November 19, 2021, the School Board replied it was necessary for Bolton to allow the school system to conduct initial evaluations of K.B. and P.B. to determine whether the children were eligible for special education and related services, id. ¶ 73, but, according to the AMENDED COMPLAINT:

> The School Board's refusal to accept Dr.
> Butnik's evaluations which lead to the finding
> during the mediation stage of this case that
> KB and PB were eligible for special education
> and related services is capricious, arbitrary,
> was in bath faith; was also intended to punish
> and retaliate against the Plaintiff's vigorous
> advocacy for her two sons; and continues to
> deny the Plaintiff and Her children their
> rights, privileges, and immunities.

Id. ¶ 75.   In other words, the act complained of in Count III occurred a year after the Court had dismissed the 2019 Case with prejudice.   Also, the conduct complained of occurred more than a year after the mediation in the 2019 Case had failed.

**(4)   Count IV**

Notwithstanding the contention asserted in the brief opposing the motion to dismiss that the causes of action in this case arose out of the failed mediation in the 2019, it appears that Count IV involves an event that occurred in 2019 and that did not appear in the mediation of the 2019 Case: the so-called disenrollment of K.B. and P.B. from the Wells Elementary School and the subsequent denial of their request for homebound instruction.

The events mentioned as the predicates for Counts III and IV do not seem to be mentioned in any of the Hearing Officer's decisions that have been brought to the Court's attention.   See Ex. A (ECF No. 37-1); Ex. B (ECF No. 37-2).

17

### (5)   Count V

Count V mentions "§ 1983" and purports to assert claims for abuse of process and malicious prosecution that appear to have occurred on or about May 20, 2019 and involve an allegedly false charge of truancy occasioned when Bolton kept her children out of school.    Apparently,    those    charges    were    *nolle    prosequi* subsequently.   Id. ¶ 90.   Another criminal complaint is referred to as having been made on June 22, 2021 again relating to Bolton's failure to enroll her children in schools as required by Virginia law.   This Count is brought solely on behalf of Bolton in her own capacity and not as a representation of the named plaintiffs, K.B. or P.B. (through Bolton as their representative).

With this background in mind, it is appropriate now to consider the School Board's MOTION.

### DISCUSSION

### A.   Lack of Subject Matter Jurisdiction:   Fed. R. Civ. P. 12(b)(1)

Fed. R. Civ. P. 12(b)(1) tests whether the Court has subject matter jurisdiction to resolve the claims before it.   When a defendant seeks dismissal under Rule 12(b)(1), the plaintiff bears the burden of proving subject matter jurisdiction.   Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991); see also Lucas v. Henrico Cnty. Sch. Bd., 822 F. Supp. 2d 589, 599 (E.D. Va. 2011).

Two types of Rule 12(b)(1) motions exist:

> First, a 12(b)(1) motion may attack the complaint on its face, asserting that the complaint fails to state a claim upon which subject matter jurisdiction can lie. In such a challenge, a court assumes the truth of the facts alleged by plaintiff, thereby functionally affording the plaintiff the same procedural protection he or she would receive under Rule 12(b)(6) consideration.
>
> However, a 12(b)(1) motion may also . . . challenge the existence of subject matter jurisdiction in fact, apart from the pleadings. In such a challenge, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

Lucas, 822 F. Supp. 2d at 599 (internal citations omitted). Moreover, in the latter situation, the court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." White Tail Park, Inc. v. Stroube, 413 F.3d 451, 459 (4th Cir. 2005) (internal quotations omitted); see also Blitz v. Napolitano, 700 F.3d 733, 736 n.3 (4th Cir. 2012) ("[On] a Rule 12(b)(1) motion to dismiss, the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings") (internal quotations omitted). The court then must "weigh th[at] evidence to determine its jurisdiction." Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). However, if "the jurisdictional facts are intertwined with the facts central to the merits of the complaint, a presumption of

truthfulness should attach to the plaintiff's allegations," and the court "should resolve the relevant factual disputes only after appropriate discovery."   24th Senatorial Dist. Republican Comm. v. Alcorn, 820 F.3d 624, 629 (4th Cir. 2016) (internal quotations omitted).

**(1)  Misnomer of Defendant**

As the School Board says, a defendant has "the right to be accurately named in the process and pleadings of the Court; and misnomer [is] properly raised by motion to dismiss . . . ".  United States v. A.H. Fischer Lumber Co., 162 F.2d 872, 873 (4th Cir. 1947).  The misnomer does not appear from the face of the AMENDED COMPLAINT.  But the AMENDED COMPLAINT, refers to the 2019 Case, which does use a different (and the correct) name.  The misnomer is brought to the Court's attention in the MOTION, so technically, the non-facial type of analysis would apply.  However, Bolton, in her reply brief, recognizes that the Defendant is misnamed and advises that she "will seek leave of Court to file a Second Amended Complaint with the correct name of the defendant to resolve this issue."  Pls.' Opp'n Def.'s Mot. Dismiss at 1 (ECF No. 36).  Thus, the analytical mode is of no particular moment.

Moreover, were misnomer the only problem with the AMENDED COMPLAINT, it likely would be an abuse of discretion not to permit an amendment properly to name the defendant to-wit: Chesterfield County School Board.   Accordingly, and in light of Bolton's

admission, the Court has entered an order naming the defendant correctly.  See Order (ECF No. 50).

**(2)  Failure to Exhaust Administrative Remedies**

The School Board seeks dismissal of Counts III and IV for failure to exhaust administrative remedies.

Parents, such as Bolton, are obligated to exhaust the administrative remedies provided by IDEA before filing a claim in federal court to enforce the rights created by the statute.  IDEA, 20 U.S.C. § 1400 et seq.; A.W. v. Fairfax County Sch. Bd., 584 F. Supp. 2d 219, 222 (E.D. Va. 2018);  Smith v. James C. Hormel Sch. of the Va. Inst. of Autism, No. 3:08cv00030, 2009 WL 1081079, at *39 (W.D. Va. Apr. 22, 2009).  The exhaustion requirement also applies to any claim challenging the denial of FAPE even if the claim is brought under a statute or constitutional provision other than IDEA.  20 U.S.C. § 1415(1) ("[b]efore the filing of a civil action under such law seeking relief that is also available under this chapter, the procedures in subsections (f) and (g) shall be exhausted to the same extent as would be required had the accident been brought under this chapter.").

As explained above, Count III (briefly described as Illegal and Unlawful Denial of Private Placement) quite clearly refers to an alleged denial of a benefit conceptually available under IDEA. Accordingly, IDEA's exhaustion requirements are applicable.  It is plain from the face of Count III as to the matter complained of

in Count III that Bolton has never requested a due process hearing as required under IDEA.

Count IV, which is summarily described as "Illegal and Unlawful Disenrollment and Denial of Medical Homebound", does not mention IDEA or FAPE specifically, but it quite clearly refers to a remedy as special educational services (homebound instruction) that is available under IDEA if a student is qualified as an individual with a disability entitled to receive such services under IDEA.   Thus, the exhaustion requirements of IDEA are applicable to the matter complained of in Count IV.   It is obvious from the text of the AMENDED COMPLAINT that there has been no request for an administrative due process hearing and no decision issued in that respect or issued by a Hearing Officer who has conducted such a hearing.

In her opposition to the motion to dismiss, Bolton does not say otherwise.   Instead, she makes the rather surprising argument that "the claims set forth in the amended complaint under Count III, . . . Count IV, . . . are properly before this Court" "because the causes of action in this case were the result of a federal mediation which Chesterfield sabotaged [and thus] there is no requirement for exhaustion of remedies."   Pls.' Opp'n Def.'s Mot. Dismiss at 1-2 (ECF No. 36).   Then, Bolton argues that, "if these actions [the matters complained of in Counts III and IV] were the subject of a due process hearing, a hearing officer would

undoubtedly rule as Hearing Officer John Robinson ruled in the April 23, 2021 hearing which was that everything done that mediation was confidential and therefore could not be raised in a due process hearing." Id. at 2.  Bolton also says that had these matters "been raised in a due process complaint, it would be almost for certain that a hearing officer would have concluded that these were matters that were handled in the mediation and therefore would deny any relief in the due process hearing because of the confidentiality of the matters done under the mediation." Id. at 3.

These remarkable arguments run contrary to the provisions of the statute[6] which require that whether brought under IDEA or some other law or some constitutional provision, the exhaustion requirement of IDEA must be satisfied if issues respecting educational services by way of FAPE are to be presented as claims in federal court under IDEA.

Quite clearly that is what is sought by Counts III and IV and thus, the exhaustion requirement applies.  Absent exhaustion, the Court has no jurisdiction to decide the claims asserted in Counts III and IV.  Accordingly, Counts III and IV will be dismissed

---

[6]    Those arguments also raise serious questions whether Bolton's counsel has satisfied Fed. R. Civ. P. 11.  A lawyer cannot sign her name to meritless claims and the above arguments advanced respecting Counts III and IV suggest that counsel consider the claims in Counts III and IV lacked merit.

without prejudice for lack of subject matter jurisdiction.

**B.    Dismissal:  Fed. R. Civ. P. 12(b)(6)**

Motions to dismiss based upon Fed. R. Civ. P. 12(b)(6) are evaluated under the following standards:

> In [considering a Fed. R. Civ. P. 12(b)(6) motion to dismiss], we must accept the factual allegations of the complaint as true and construe them in the light most favorable to the nonmoving party.   To survive a 12(b)(6) motion, the "complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"   A claim is "plausible on its face," if a plaintiff can demonstrate more than "a sheer possibility that a defendant has acted unlawfully."

Rockville Cars, LLC v. City of Rockville, 891 F.3d 141, 145 (4th Cir. 2018) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

The Court "may consider documents attached to the complaint or the motion to dismiss so long as they are integral to the complaint and authentic."   Rockville Cars, 891 F.3d at 145 (citation omitted).   And, the Court may consider "documents that are explicitly incorporated into the complaint by reference." Goines, 822 F.3d at 166.

Notwithstanding those basic principles, however, the Court does not "accept as true a legal conclusion couched as a factual allegation."   SD3, LLC v. Black & Decker (U.S.) Inc., 801 F.3d 412, 422 (4th Cir. 2015) (citation omitted).   "Threadbare recitals

24

of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

The brief in support of the MOTION contains a heading that says: "The Complaint Must Be Dismissed Under Rule 12(b)(6) for Failure to State a Claim." Mem. Supp. Mot. Dismiss at 16 (ECF No. 27). However, the MOTION itself seeks dismissal under Rule 12(b)(6) only of Counts I and II.

### (1)   Count I

The theory posited for dismissal of Count I is that it is "an improper attempt to enforce a non-existent settlement agreement." Id. at 8. The supporting brief rambles at length about the issue of the confidentiality of settlement agreements and is really not comprehensible as a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

The rather unusual approach taken by the supporting memorandum is that because, in filing the AMENDED COMPLAINT, Bolton made public certain statements made during settlement negotiations which, under Fed. R. Evid. 408(b) and Local Civ. R. 83.6, are inadmissible, the Court must strike the offending allegations from the AMENDED COMPLAINT (without discussing what those offending allegations actually are) and in that event then "Count I of the Complaint will become, in essence, a nullity." Id. at 19. The argument continues that "no relief should be had by Plaintiffs under Count I by virtue of their misconduct in disclosing actions

25

taken and statements made during the course of the Settlement Conference.  Simply put there is no settlement agreement – and the Court should decline Plaintiffs' brazen invitation to create one from whole cloth."  Id. at 19-20.

Wholly apart from the question of the confidentiality of settlement discussions, what Count I makes clear is that there was, in fact, no settlement agreement and therefore, to the extent that Count I can be read as an attempt to enforce the settlement agreement, it fails to allege a claim upon which relief can be granted.  However, reviewing the text of Count I and the prayer for relief, the Court cannot conclude that Count I is intended as an effort to enforce the settlement agreement.  Rather, the allegations of Count I simply boil down to the assertion that "defendant used delay and deny as a tactic to intentionally extend the mediation beyond the time limitations set by the Court [for filing an Amended Complaint] knowing that if this happened, the Court would do just as it did and dismissed [sic] the case with prejudice."  Am. Compl. ¶ 55 (ECF No. 2).  That language tracks the text of the mediation provision in IDEA.  20 U.S.C. § 1415(i)(2)(A)(ii).  Whatever else may be said about this theory, it does not state a claim that is somehow cognizable under IDEA. Indeed, neither Count I nor Bolton's response brief makes any reference to a statutory, constitutional, or decisional predicate of any kind.  Tellingly, in her opposition to the MOTION, Bolton

26

does not even mention Count I.    See generally Pls.' Opp'n Def.'s
Mot. Dismiss (ECF No. 36).

Considering that there is no authority cited for the claim
apparently intended to be asserted in Count I, and considering
that the Court has been unable to find any such authority, and
taking into account that Bolton does not defend Count I, and that
Count I does not comply with Ashcroft v. Iqbal, 556 U.S. 662 (2009)
and Bell Atlantic v. Twombly, 550 U.S. 544 (2007), it is obvious
that Count I does not state a claim upon which relief can be
granted, and the MOTION as to Count I will be granted for that
reason.

Moreover, there is no private right of action under IDEA for
parties to challenge the mediation process. See Va. Off. of Prot.
& Advocacy v. Va. Dep't of Ed., 262 F. Supp. 2d 648, 660 (E.D. Va.
2003).    Thus, Count I, if intended to be a challenge to the
mediation process, fails for that reason as well.   The dismissal
will be with prejudice.

### (2)   Count II

In discussing Count II, the School Board notes that the
parenthetical descriptive of the Count is "Appeal of Decision in
KB's Due Process Proceeding."  However, the School Board correctly
cites that the substantive paragraphs in Count II (paragraphs 56-
69) only mention allegations relating to P.B.   Accordingly, the
parenthetical description must be regarded as pertaining to P.B.

or discarded as surplusage to the extent that it is interpreted to actually encompass K.B.

The thrust of the MOTION as to Count II, when considered as relating to the appeal of P.B.'s due process decision, is that the AMENDED COMPLAINT fails "to allege any facts to support an inference that the [Hearing Officer's decision] was not 'regularly made.'" Mem. Supp. Mot. Dismiss at 8 (ECF No. 27). That seems to be a reasonable interpretation of Count II.

Then, says the School Board, "the Court must give 'due weight' to the Decision, including Hearing Officer Robinson's factual findings and credibility determinations." Id. In discussing the issue in more detail, the School Board says that "The Allegations Appearing in Count II of the Complaint Do Not Support an Inference that the Hearing Officer's Decisions Were Irregularly Made." Id. at 20.

Citing Cnty. Sch. Bd. of Henrico Co., Va. v. Z.P., 399 F.3d 298, 305 (4th Cir. 2005), the School Board correctly says that "[f]indings are not 'regularly made' when they are 'reached through a process that is far from the accepted norm of a fact-finding process.'" Id. at 19-20. Citing J.P. v. Cnty. Sch. Bd. of Hanover Cnty, Va., 516 F.3d 254, 259 (4th Cir. 2008), the School Board accurately explains that "[w]hen a hearing officer 'conduct[s] a proper hearing, allow[s] the parents and the School Board to present evidence and make arguments, and the hearing officer by

28

all indications resolv[es] the factual questions in a normal way, without flipping a coin, throwing a dart, or otherwise abdicating its responsibility to decide the case,' his findings are 'regularly made.'" Id. at 20.

A review of the AMENDED COMPLAINT quite clearly shows that it recites facts that show that the decision of the Hearing Officer was regularly made.  A review of that decision certainly confirms that to be the case. See Ex. B (ECF No. 37-2).  Without question, Count II fails to meet the pleading requirements to show a violation of IDEA and certainly does not meet the requirements of Twombly and Iqbal.  Count II will be dismissed with prejudice.

**(3)  Count V**

Count V is described as "!983 [sic] and State Tort Claims Abuse of Process and Malicious [sic] of Plaintiff for Truancy." Am. Compl. at 16 (ECF No. 2).  In paragraph 84, the AMENDED COMPLAINT says that "[t]his Count applies only to Plaintiff Siddiqi, nee Bolton" and indeed, the subsequent allegations show that that to be correct.  In the caption of the case, Bolton sues as the "mother and next friend of K.B. and P.B."  And, in the section of the AMENDED COMPLAINT entitled "PARTIES" it is alleged that "K.B. ('KB') and P.B. ('PB') are the minor children of their mother and next friend, MELISSA SIDDIQI, nee BOLTON ('Plaintiff')".  It is quite obvious from both the caption and the text of the AMENDED COMPLAINT that Bolton is the plaintiff only in

29

her representative capacity, and is suing only on behalf of her children and not in her own behalf.  Accordingly, Count V recites a claim that does not belong to a party in the case.  Therefore, Count V must be dismissed without prejudice to the assertion of it by Bolton in her own right in a separate proceeding if she has such a claim.[7]

## C.   Improper Joinder

The MOTION seeks dismissal of the action for improperly joining K.B. and P.B. in the same action.  It is not clear that these parties are misjoined.  However, as indicated previously, Fed. R. Civ. Proc. 21 specifically provides that it is not proper to dismiss a complaint because of the joinder.  The proper remedy is for the Court to examine the allegedly misjoined party's situation and either dismiss that party from the case or add the party to the case as appropriate.[8]  Even the case on which the School Board relies recognizes that the proper course is to permit amendment.  See A.H. Fischer Lumber Co., 162 F.2d at 873-74.  The MOTION on that ground is denied.  Considering that the MOTION is

---

[7]    Before advancing such a claim in this Court, counsel is admonished to study Fed. R. Civ. P. 11.

[8]    The School Board cites no authority that the misnomer of the defendant is a ground for lack of subject matter jurisdiction. And the case cited in the papers (misnomer is reachable by motion to dismiss) does not address the question as one of subject matter jurisdiction.

to be granted on other grounds, it is not necessary to examine the matter of remedy.

**D. Attorneys' Fees**

There are two issues about attorneys' fees presented in the School Board's brief in support of the MOTION. <u>See</u> Mem. Supp. Mot. Dismiss at 23-24 (ECF No. 27). Neither is mentioned in the MOTION.

First, the School Board disputes the part of the AMENDED COMPLAINT that seeks on behalf of Bolton attorneys' fees. <u>See</u> Am. Compl. ¶ 7 at 20 (ECF No. 2). That issue is moot in perspective of the dismissal of the AMENDED COMPLAINT.

Second, the brief argues that the School Board is entitled to its attorneys' fees: (a) against Bolton's counsel under 20 U.S.C. § 1415(i)(3)(B)(i)(II) for "bringing a complaint that is frivolous, unreasonable, and/or without foundation," and (b) against Bolton and her counsel under 20 U.S.C. § 1415(i)(3)(B)(i)(II):

> because the AMENDED COMPLAINT was presented for an improper purpose and is part of a long history in which ;[Bolton] has continued to harass the School Board, in the Court and in due process hearings, and has needlessly increased the cost of litigation to the School Board by litigating baseless issues.

Mem. Supp. Mot. Dismiss at 24 (ECF No. 27).

Neither request for attorneys' fees by the School Board is developed. Nor, did the School Board actually file a motion for

attorneys' fees supported by a brief citing applicable decisional law and documented as to amounts, as one would expect if the request were thought to be a serious one. Nonetheless, there are two reasons why the School Board's request will not be summarily denied.

To begin, as previously explained, the AMENDED COMPLAINT is strange, and it is quite clearly legally insufficient. Next, one of the advocates in the case has, in another IDEA case, publicly stated a strategy of "filing due process [hearing request] after due process [hearing request] to show financial impact . . . of you don't listen to us, we will start costing you money." <u>Henrico Cnty. Sch. Bd. v. Matthews</u>, No. 3:18cv110 (E.D. Va. Oct. 2, 2019), Mem. Op. at 22 (ECF No. 220).

Therefore, it is appropriate to allow the School Board an opportunity, if it so be advised, to file a proper motion for attorneys' fees with proper supporting documentation (as to amounts) and, if proper, legal briefs supporting the contention that the law and the facts present an award of attorneys' fees in this case. Local R. Civ. P. 7(F). If such a motion[9] is to be filed, it must be filed on May 2, 2022. Bolton and her counsel

---

[9]   If such a motion is filed, the Court expects that counsel will fully research the issues and present a proper motion and brief with the requisite supporting information; cursory treatment of the issue of the sort presented in the brief supporting the MOTION will not be entertained.

shall file a response brief on  May 16, 2022; and the School Board shall file its reply brief on June 1, 2022.

CONCLUSION

For the foregoing reasons, the MOTION TO DISMISS (ECF No. 26) will be granted.   It is unnecessary to address the PLAINTIFFS' MOTION TO DISQUALIFY AND REMOVE COUNSEL FOR CHESTERFIELD COUNTY PUBLIC SCHOOLS (ECF No. 20) and MOTION TO STRIKE (ECF No. 24), and they will be dismissed as moot.

It is so ORDERED.

_____ /s/  REP

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: April ___20___, 2022